UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:                                                              Case No. 06-72206-ast

Steven P. Mangiapanella,                                            Chapter 7

                              Debtor.
----------------------------------------------------------------X
Piotr Niedzwiecki,                                                  Adv. Pro. No. 06-8461-ast

                              Plaintiff,

       -against-

Steven P. Mangiapanella,

                              Defendant.
----------------------------------------------------------------X

**APPEARANCES:**

       Steven A. Costantino, Esq.
       Constantino & Constantino
       Attorneys for Plaintiff
       632 Merrick Road
       Copiague, NY 11726

       Richard F. Artura, Esq.
       Phillips, Weiner, Quinn & Artura
       Attorneys for Debtor/Defendant
       165 South Wellwood Avenue
       PO Box 405
       Lindenhurst, NY 11757

HON. ALAN S. TRUST, United States Bankruptcy Judge:

## **MEMORANDUM OPINION**

### **Summary of Action**

This is an action by which the Plaintiff, Piotr Niedzwiecki ("Plaintiff"), seeks to determine a debt allegedly owed to him to not be dischargeable pursuant to 11 U.S.C. §523(a) (6).  Trial was held before this Court on August 15, 2008.

### **Findings of Fact and Conclusions of Law**

The following constitute this Court's findings of fact and conclusions of law made pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### **Jurisdiction**

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§157(b) (2) (I) and 1334(b), and the Standing Order of Reference in effect in the Eastern District of New York.

### **Procedural History**

Steven P. Mangiapanella (the "Debtor"), filed his Chapter 7 Petition on September 13, 2006. Neil H. Ackerman was duly appointed as the Chapter 7 Trustee (the "Trustee"). Plaintiff timely commenced this adversary proceeding on December 11, 2006, seeking to except from any discharge granted to the Debtor a debt he alleges is owing to him. Debtor obtained his discharge by Order entered on December 28, 2006. Plaintiff filed a letter in the main bankruptcy case on December 29, 2006, stating that this adversary had been filed, and asserting that the Order of Discharge should not moot this adversary. The Court treats the filing of this adversary proceeding as having properly and timely preserved Plaintiff's objection to Debtor's discharge of the debt Plaintiff claims is owing to him.

### **Plaintiff's Claim, and Summary of Ruling**

Plaintiff claims that he was run over by Debtor while Debtor was driving his car on the night of November 10, 2004, and that, as the result thereof, any debt arising from that incident is excepted from Debtor's discharge under Section 523(a)(6) of the Bankruptcy Code. Section 523(a) (6) provides, in pertinent part, as follows:

> [a] discharge under Section 727...of this title does not discharge and individual debtor from any debt...
>
> (6) for wilful and malicious injury by the debtor to another entity or to the property of another entity.

Plaintiff acknowledges that, as the creditor asserting an exception to the Debtor's discharge, he bears the burden of proof by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291, 111 S.Ct. 654 (1991).  Plaintiff further acknowledges that there is a clear distinction between reckless conduct and negligent conduct which are dischargeable as a matter of law, and "wilful and malicious" conduct, for which liability may not be discharged under 523(a)(6).

Debtor correctly asserts that debts arising from recklessly inflicted injuries do not fall within 11 U.S.C. 523(a) (6) and are, therefore, discharged.  Kawaauhu v. Geiger 523 US 57; 118 S.Ct. 974 (1998) ("We hold that debts arising from recklessly or negligently inflicted injuries do not fall within the *compass* of §523(a)(6)")   Debtor further correctly asserts that, under Kawaauhu, a determination of non-dischargeability requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.  118 S.Ct at 978.  The parties agree that Plaintiff's burden of proof is by a preponderance of the evidence.

Thus, the issue before this Court is, did Plaintiff prove by a preponderance of the evidence that Debtor deliberately or intentionally, wilfully and maliciously, injured him on the night of November 10, 2004.  The Court concludes that Plaintiff did not meet his burden of proof.

**The Stipulated Facts**

The parties have stipulated to the following facts in their Amended Joint Pre Trial Memorandum [dkt item 26]:

1. That on September 13, 2006, Steven P. Mangiapanella (hereinafter the "Debtor-Defendant") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

2. That Neil H. Ackerman c/o Meltzer, Lippe & Goldstein, LLP, 190 Willis Avenue, Mineola, New York 11501 is the duly appointed Chapter 7 Trustee pursuant to 11 U.S.C. 704 and by operation of law, became the permanent Trustee of this bankruptcy case.

3. That Debtor-Defendant is presently a resident of the County of Suffolk, State of New York, and resides with his natural parents at 110 South 2nd Street, Lindenhurst, New York 11757.

4. That Piotr Niedzwiecki, Plaintiff in the adversarial proceeding [sic] referenced above (hereinafter the "Plaintiff"), is currently a foreign domiciliary and resides at: ul. Witosa 9 m 20  18-500 Kolno woj. podlaskie   Poland.

5. That between October 1, 2004 and November 30, 2004, Plaintiff was a resident of the County of Suffolk and State of New York, and resided at the premises known as 25 Prince Chico Street, Copiague, New York 11726.

6. That the Debtor-Defendant was born on January 18, 1987 and is currently 21 years of age.

7. That the Plaintiff was born on September 17, 1981 and is currently 27 years of age.

8. That on November 10, 2004 the Debtor-Defendant was the owner of a certain white 1997 Mercury Cougar automobile bearing vehicle identification number 1MELM6247VH627449, bearing New York license plate number CZH8045 (hereinafter referred to as the "vehicle").

9. That at approximately 10:30 p.m. on November 10, 2004, the Debtor-Defendant  was operating the vehicle in a westerly direction on Albert Street in Lindenhurst, New York.

10. That at approximately 10:30 p.m. on November 10, 2004, the Plaintiff was a pedestrian on Albert Street between North Greene Avenue and North Hamilton Avenue in Lindenhurst, New York.

11. That at approximately 10:30 p.m., on November 10, 2004, while the Debtor-Defendant was operating the 1997 Mercury Cougar automobile in a westerly direction on Albert Street, in Lindenhurst, New York, the said vehicle came into contact with the Plaintiff.

12. That as a result of the contact between the automobile driven by the Debtor-Defendant and the Plaintiff's person, the Plaintiff sustained serious physical injury as defined by New York Insurance Law 5102(d).

### **How Did the Incident Occur?**

The core, central fact for determination by this Court is, did Debtor intentionally hit the Plaintiff with his car, intending to and thereby causing him injury. It is an understatement to say that the trial record before this Court is cluttered with irrelevant information and an excessive level of disagreement over innocuous inconsistencies. If, after ferreting through that thicket, this Court were to find that Plaintiff proved the Debtor ran him down on purpose, this Court would conclude that Debtor intended to wilfully and maliciously injure him and, therefore, any debt arising therefrom would not be discharged. This Court, however, cannot find that fact or reach that conclusion.

First, this Court notes that Debtor is not a very credible witness, nor is he an honorable young man. However the incident did occur, the power generated by the impact from Debtor's car was such that Plaintiff was separated from his shoes, and propelled over the hood of Debtor's car with a force adequate to spider-web crack Debtor's entire windshield. Debtor then fled the scene of this accident, leaving Plaintiff lying prone and bleeding on a dark Lindenhurst street. No reasonable person could assume that Plaintiff had not been injured by this collision of flesh and blood with automotive steel. Debtor fled to his house, along the way calculating a lie to tell his mother. When he arrived home, Debtor had the presence of mind to hide his car behind the house, away from public view, and out of sight from the police that Debtor had to

know would be looking for him.  When Debtor arrived home, he told his mother the lie he had concocted about what happened – that someone threw a brick through his windshield.  It only took a minute for the wisdom of a mother's knowledge of her own troubled son to melt away this fabrication.  Once she learned of the true facts of the incident, she called 911.  Debtor later pled guilty to a felony of reckless assault in the second degree for this incident.

Debtor's testimony at trial was inconsistent at best with his deposition testimony, and, at times, inconsistent even during the trial.  Debtor has had run-ins with the law since November 10, 2004.  Plaintiff's counsel did an admirable job of exposing the flaws in Debtor's moral fibre. However, Debtor's tawdry character and inexcusable conduct post-incident do not mean he intentionally ran the Plaintiff over.

Plaintiff's deposition testimony[1] is not very illuminating, nor free of inconsistencies with his witness statement given to the police the night of incident.  Most notable however, are two glaring incongruities. First, while Plaintiff consistently asserts he was in the street running away from Debtor's car, he never testified that he turned around to face the vehicle before he was hit.  The evidence is uncontroverted, and the parties

---

[1] By Order dated August 12, 2008, Plaintiff, who resides in Poland and has severe physical limitations, was authorized to be examined at trial over the internet through the Skype service.  Due to connection failures, and in accordance with the August 12 Order, Plaintiff was unable to be examined at trial via Skype.  Plaintiff then instead sought to introduce certain portions of Plaintiff's deposition, which had been conducted over the internet via Skype. Defendant objected to the introduction of the deposition testimony on the basis, inter alia, that Plaintiff had been "coached" by someone who was in the room with Plaintiff in Poland during the deposition.  The Court allowed the deposition testimony to be admitted with the caveat that such testimony would be excluded if the Court determined that Plaintiff's testimony was unduly influenced or interfered with.  A copy of the audio recording of the deposition was provided to the Court. The Court has reviewed the recording and determined that there may have been some influence and/or interference with the deposition by a third party that attended the deposition in Poland.  However, the influence and/or interference predominately pertained to collateral issues.  Moreover, to the extent there was "coaching", it only would have benefitted Plaintiff.  Given the Court's ultimate decision in favor of Defendant herein, Defendant's objection is overruled.  Accordingly, Plaintiff's requested deposition testimony is admitted and accepted by the Court without limitation.

agreed at trial, that the front of the Plaintiff's body was struck by the front of Debtor's car. If he was running away, he would have to have turned to face the Debtor's on-coming car before he was hit.  Second, no rational person runs away from a car he believes is chasing him, driven by a person he knows dislikes him, a person he had pummelled once before, stays in the middle of the street while being chased, and then turns around to be hit.

Plaintiff admitted to having been hiding in the bushes at one point during this car-human escapade, shortly before the incident. [Trial Ex. 28]  Had Plaintiff been running away in the middle of the street, he could easily have escaped danger by dashing back into the bushes.  He could easily have gotten off the pavement.  Yet, Plaintiff asserts he stayed running in the street, and then, presumably, turned around to be hit by the vehicle chasing him.

No credible evidence explains how Debtor's car hit the front of Plaintiff, other than Debtor's testimony that Plaintiff lunged out of the bushes, in too short a time for Debtor to avoid hitting him. This jumping at a moving car, too, is an irrational act; yet, it is consistent with a prior confrontation between these two young men.  In October 2004, approximately one month prior to the incident that forms the basis of the instant adversary proceeding, Plaintiff leapt head first into Debtor's car while it was occupied by three young men, including Debtor, then beat Debtor to the point of sending him to the emergency room.  Albeit, Debtor's car was parked the first time, but there is no rational explanation for Plaintiff diving headlong into a car occupied by three young men who were not his friends, even if his intent was to "lay a whooping" on Debtor.  There is, sadly, an irrational explanation for all of what occurred – Plaintiff and Debtor had been

7

vying for the affections of the same underage girl. The Court will waste no further judicial resources on that sad love triangle.

Equally significant for this Court's conclusion is that no one saw Debtor run Plaintiff over. The sister of the girl in the middle of the love triangle testified that she watched Plaintiff on the night on November 10, 2004, from the time he walked away from her house on North Green Avenue until he was lying on the pavement on Albert Street. She saw Debtor's car circle the block. She heard what sounded like a car accelerating. The only thing she did not see was how Plaintiff came to be in front of Debtor's car or how he came to be struck by the car.

The only non-party eyewitness to the incident, then, was a Krzysztof Morcorski, who was in the Debtor's car when it struck Plaintiff. Neither side brought him to trial nor, apparently, took his deposition. The parties did stipulate to the admission of his police statement (Ex. 4), in which Mr. Morcorski states:

> When we passed the house, Peter ran at the car and was yelling something, I don't know what. We drove passed [sic] him and Steven turn left, left and left he made three lefts. When he [Debtor] makes the last left I didn't see Peter, it happened fast. I looked and Steven hit Peter with the car. Peter banged into the windshield.

This statement is not consistent with Plaintiff's testimony in his deposition and police statement, but is consistent with Debtor's trial testimony.

The most likely version of events, then, is that Plaintiff leapt from the bushes, either intending, or not, to have a confrontation with Debtor, or jumped out of the bushes such that Debtor did not see him in time to stop. In either event, Plaintiff did not prove that Debtor intentionally ran him over. While Debtor's actions thereafter were deplorable, his conduct at the time relevant to this dispute is not non-dischargeable.

The claim here is not for injuries sustained as the result of Debtor fleeing the scene; the claim is for injuries sustained as the result of the collision.

## **Legal Analysis**

Plaintiff had the burden to prove wilful and malicious injury by the Debtor under Section 523 (a)(6). He had to prove that Debtor's conduct was such that he intentionally or purposefully injured him, in order for his alleged debt to be excepted from Debtor's discharge, Kawaauhu, 118 S.Ct. at 977. Plaintiff did not satisfy his burden of proof.

## **Conclusion**

Based on the foregoing, all relief sought by the Plaintiff should be and is denied. A separate judgment hereon will be entered.

Dated:  Central Islip, New York
             August 28, 2008

                                                                    */s/Alan S. Trust*
                                                                    Alan S. Trust
                                                                    United States Bankruptcy Judge